UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROSS HATHAWAY,<br><br>Plaintiff,<br><br>v.<br><br>IDAHO PACIFIC CORPORATION,<br><br>Defendant. | Case No. 4:15-cv-00086-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

This matter comes before the Court on Idaho Pacific Corporation's ("IPC") Motion in Limine to Exclude Purported "Other Acts" Evidence. Dkt. 57. IPC seeks to prevent Plaintiff Ross Hathaway from introducing evidence regarding seven other former IPC employees at trial who share two characteristics with Hathaway: (1) they no longer work at IPC and (2) at some time during their employment they filed a workers compensation claim. IPC argues this testimony is (1) not relevant and thus inadmissible under Rule 402; (2) "other acts" evidence that is inadmissible under 404(b)(1); and (3) confusing, prejudicial, and cumulative and thus inadmissible under Rule 403. It is unclear to the Court whether Hathaway seeks to call all seven former IPC employees at trial or simply present evidence about these employees through a Rule 30(b)(6) deposition transcript. Either way, the Court concludes that the evidence should not be admitted at trial. Accordingly, the Court GRANTS the Motion.

## II. THE APPLICABLE RULES

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed R. Evid. 401. Rule 402 provides that "[all] relevant evidence is admissible . . . . Evidence which is not relevant is not admissible." Although the definition of "relevant evidence" is broad, it has limits; evidence must be probative of a fact of consequence in the matter and must have a tendency to make the existence of that fact more or less probable than it would have been without the evidence. *U.S. v. Curtin*, 489 F.3d 935, 943–44 (9th Cir. 2007). Trial judges have "wide discretion" in determining whether evidence is relevant. *United States v. Alvarez*, 358 F.3d 1194, 1205 (9th Cir. 2004) (quoting *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983)).

Even if evidence is relevant the Court can still exclude it "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Finally, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Ninth Circuit has "held that 'other act' evidence is admissible under

Rule 404(b) if the following test is satisfied: (1) there must be sufficient proof for the jury to find that the defendant committed the other act; (2) the other act must not be too remote in time; (3) the other act must be introduced to prove a material issue in the case; and (4) the other act must, in some cases, be similar to the offense charged." *Duran v. City of Maywood*, 221 F.3d 1127, 1132–33 (9th Cir. 2000) (footnote omitted).

### III. APPLICATION

Hathaway argues the testimony of the other former IPC employees is relevant to show he suffered an adverse employment action because of his disability, the third element of a valid ADA claim. *See Nunes v. Wal–Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999). Indeed, the "ADA outlaws adverse employment decisions motivated, even in part, by animus based on a plaintiff's disability or request for an accommodation." *Head v. Glacier Nw. Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005).

The Supreme Court has taken up the question of the relevance and the admissibility of so-called "me-too" evidence in employment discrimination cases—evidence from former, non-party employees alleging discrimination at the hands of the defendant-employer. The Supreme Court has clarified that such "me-too" evidence is "neither per se admissible nor per se inadmissible." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 380 (2008) (considering, in age discrimination case, whether district court properly "excluded testimony by nonparties alleging discrimination at the hands of supervisors of the defendant company who played no role in the adverse employment decision challenged by the plaintiff"). Rather, "[r]elevance and prejudice under Rules 401 and 403 are determined in the context of the facts and arguments in a

particular case." *Id.* at 387. Moreover, the question of whether "me-too" evidence is relevant "depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Id.* at 388.

The Ninth Circuit has had little occasion to apply *Sprint/United Management*. However, in *Moore v. Donahoe*, 460 F. App'x 661, 663 (9th Cir. 2011), an unpublished opinion, the Ninth Circuit found "[t]he district court did not abuse its discretion by excluding evidence of other . . . employees' observations regarding race discrimination." The panel explained that "the district court conducted a thorough, fact-intensive inquiry under Federal Rule of Evidence 401 before determining that the majority of the evidence was not relevant to [the plaintiff's] claims," in part because the other employees the plaintiff offered were not "similarly situated" to the plaintiff. *Id.* Other circuits, in published opinions, have interpreted *Sprint/United Management* as requiring a similar fact-intensive, case-by-case analysis. *See, e.g.*, *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 424–25 (8th Cir. 2017). Thus, the Court turns to such an inquiry with regard to each proposed witness now.

### A. Terrance Cagle

IPC hired Terrance Cagle on February 22, 2015. After injuring his knee several times, Cagle re-injured his knee on June 21, 2015, while working as a "bagger." Cagle failed to report the injury to IPC until 15 hours after the incident and after he sought medical attention. This delay in reporting was a violation of IPC policy. His doctor authorized him to return to work on June 22, 2015, with some restrictions. Cagle did not return to work that day. On June 24, 2015, IPC terminated Cagle for excessive absences.

By failing to arrive at work on June 22, 2015, Cagle exceeded the seven unexcused absences IPC allows each employee each season. Cagle had also been written up several times for failing to shave, taking excessive breaks, and failing to complete assigned duties.

The probative effective of evidence regarding Cagle's injury and termination is minimal. Yes, both Cagle and Hathaway were injured at work and terminated by IPC. But IPC did not terminate Hathaway for excessive absences and, unlike Hathaway, the reason for Cagle's termination is clearly supported by documentation. The Court finds the delay and confusion introducing this evidence will cause outweighs the minimal probative benefits.

*B. Ana Limas*

Ana Limas worked in sanitation for IPC for 14 years. In June 2014, Limas reported that her thumb was hurting. Then, on July 11, 2014, she reported a sharp pain in her thumb while using a high-pressure hose. Limas' injury necessitated light duty, surgery, and time off. Sometime before Limas' injury IPC began conducting an I-9 audit. During this audit, IPC discovered that there were some mistakes on Limas' I-9 form. IPC asked Limas to correct these mistakes and to provide documentation that shows she could work legally in the United States. Limas did not correct her I-9 or provide documentation of her legal status. IPC expressed concern that Limas was "faking an injury to avoid correcting her I-9." Limas was terminated on July 31, 2014, because she was "unable to provide work verification documentation & unable to correct form I-9."

Limas' termination bears little resemblance to Hathaway's. Hathaway was not terminated for failure to correct his I-9 form, or any other employment paperwork. Further, failure to correct an I-9 or provide required documentation of legal work status is a firable offense. Hathaway has not provided any evidence that IPC fabricated this reason for termination and IPC indicates several other employees were fired around the same time for the same offense. Hathaway argues Limas' story shows IPC's pattern of accusing employees of serious misconduct after they reported a work injury. The Court disagrees. IPC was rightly concerned about filing a workers compensation claim for an individual who potentially could not legally work in the United States. Again, the only similarities between Hathaway and Limas are that they both suffered a work injury and were terminated from IPC. The probative value of these two facts alone is insufficient to outweigh the confusion and delay presenting evidence about Limas' employment will cause.

*C. Devin Miner*

IPC employed Devine Miner from April 5, 2013, to March 11, 2015, when IPC fired Miner for excessive absences. On November 3, 2014, IPC warned Miner that he already had five absences and that he could only have two more absences before the season ended on July 31, 2015. Because of his absences, IPC also told him that if he missed any workdays before December 31, 2014, he would be put on probation for thirty days. On November 12, 2014, Miner again missed work. He was written up and put on probation. Then, on January 12, 2015, Miner injured his lower back while at work. He returned to work on January 19, 2015. He was placed on "light duty" until his follow up

appointment on February 12, 2015. Miner missed work again on January 23, 2015. He was warned he was at the maximum number of absences for the season. Miner then missed work again on March 9, 2015. Because he had exceeded the number of absences allowed, IPC terminated Miner on March 11, 2015.

As with Cagle, the reason for Miner's termination—excessive absences—is clear and documented. Thus, as with Cagle, Hathaway's termination and Miner's termination are not similar enough to allow admission of this evidence at trial. The minimal probative value is outweighed by the delay and confusion caused by walking through the circumstances of Miner's employment and termination.

### *D. Abigail Lees*

IPC employed Abigail Lees from July 11, 2014, until October 18, 2014. On October 17, 2014, Lees scraped her back while working in her sanitation position at IPC. Lees "reported this incident, but did not identify medical treatment was necessary, then she went to the doctor." However, Lee "did not complete an incident report, did not follow-up with the doctor, [did] not responded to . . . calls, [and] stopped reporting for work." Because Lees stopped showing up for work, IPC assumed Lees had quit. This fact is reflected on Lees' employment separation form, which Lees' supervisor signed on October 30, 2014, after Lees had, apparently, failed to appear many days in a row. Even though Lees did not complete an incident report, IPC submitted a "Workers Compensation – First Report of Injury of Illness" for Lees' injury on November 18, 2014.

There is no indication from the evidence that IPC terminated Lees. Rather, the evidence indicates Lees' quit showing up at IPC after she was injured at work. Lees

experience is insufficiently similar to Hathaway's and does not tend to show IPC had a pattern or motivation for terminating employees who injured themselves or sought workers compensation. Hathaway will not be permitted to admit evidence regarding Lees at trial because it is not sufficiently relevant to the issues at hand.

*E. David Willis*

IPC employed David Willis from January 12, 2012, until July 21, 2014. Willis' separation paperwork indicates he was terminated for being hostile toward others, a violation IPC's code of conduct. Throughout his employment at IPC, Willis had been warned verbally and in writing that his "verbal altercations" and "outbursts" were unacceptable. Willis injured his neck and spine while at work on November 4, 2013. After this injury, Willis sought medical care and had restrictions placed on his ability to perform certain work duties. On April 2, 2014, IPC transferred Willis permanently to a "light duty" position. He became angry and hostile at that time, and on several other occasions, before IPC terminated him. In June of 2014, Willis attempted to complete tasks that were beyond his work restrictions. Willis' supervisor issued a written warning to Willis because of "the severity of this action." On July 14, 2014, Willis reported to work. IPC had not yet received a "notice of return to work without restrictions," so Willis was asked to visit the human resources office. Willis refused and became "verbally hostile." On July 21, 2014, IPC terminated Willis over the phone.

Willis' termination for being verbally hostile at work, in violation of IPC policy, is valid and well documented. Thus, Willis' termination and Hathaway's termination are dissimilar in many ways. Accordingly, evidence of Willis' termination would add little to

Hathaway's case, while causing delay and confusion. The Court will, therefore, not allow Hathaway to admit such evidence.

### F. Benjamin Garcia Reyes

IPC employed Benjamin Garcia Reyes from October 21, 2009, until December 15, 2011. On September 30, 2011, Garcia Reyes injured his finger while at work. After treatment, Garcia Reyes returned to work with some restrictions. On October 20, 2011, Garcia Reyes received a written warning after he was observed cross contaminating chemicals, which he had been trained multiple times not to do. On November 10, 2011, Garcia Reyes received a written warning after he failed to wear ear plugs, as required, at work. On December 8, 2011, Garcia Reyes was suspended for three days after 62,000 pounds of product under Garcia Reyes' supervision was defectively produced and shipped to a customer. Significantly, "the samples [Garcia Reyes] submitted for testing during this production run were not representative of the product [he] was actually allowing into the bags." Thus it "appear[ed] as though the samples were selected in such a way as to ensure the quality department would not place this product on hold." At the end of the three-day suspension, Garcia Reyes did not return to work. Garcia Reyes' separation paperwork, signed on December 19, 2011, indicates Garcia Reyes quit.

As with Lees who quit by failing to show up to work, there is no evidence that IPC terminated Garcia Reyes. Rather, the evidence shows Garcia Reyes quit by failing to show up to work. Accordingly, evidence of Garcia Reyes' injury and separation from IPC is not relevant to Hathaway's case. Hathaway tries to argue that Garcia Reyes' multiple write-ups following his finger injury shows a pattern of heightened scrutiny of injured

worked. The Court disagrees. Cross-contaminating chemicals and producing 62,000 pounds of defective product is worthy of discipline under even the lowest levels of scrutiny. And, most significantly, it is highly unlikely that IPC would fabricate such severe health and safety hazards.

*G. Christian Nelson*

On August 8, 2011, Christian Nelson requested FMLA leave to deal with a serious medical condition. This request was granted and Nelson return to work in September of that year. On January 29, 2014, Nelson again requested FMLA leave to deal with his medical condition. This request was also granted. On April 28, 2014, after Nelson had returned from FMLA leave, Nelson discussed with IPC the difficulties he was having performing his job duties and going up the stairs to reach his second floor office. IPC concluded that it was not reasonable to relocate Nelson's office as there was no other space available or to give Nelson another position that did not require climbing the stairs. IPC then "cho[se] to end" its "employment relationship" with Nelson. On May 8, 2014, Nelson and IPC entered into a written agreement regarding Nelson's separation from the company.

The Court does not opine on the legality of IPC's actions regarding Nelson's employment. Nevertheless, the Court finds evidence regarding the circumstances of Nelson's employment and separation from IPC are irrelevant to Hathaway's case. Unlike Hathaway, there is no indication that Nelson was injured at work, was terminated, or sought workers compensation. Further, unlike Nelson, Hathaway does not allege IPC denied him reasonable accommodations for his medical condition. Accordingly, the

Court will not allow Hathaway to introduce evidence regarding Nelson's employment as it is largely irrelevant and would create confusion and undue delay.

## IV. CONCLUSION

In sum, the Court finds that none of the circumstances of the other former IPC employees are sufficiently relevant and probative to be presented at trial. For the most part, it seems Hathaway is attempting to establish that IPC has a pattern of firing all employees who have suffered a work injury. However, the evidence IPC seeks to use to establish this pattern seems distorted. The Court has no idea, for example, how many IPC employees have suffered work injuries and how many of those employees IPC actually terminated. Thus, the Court knows of no evidence establishing an overarching pattern of discrimination. Further, the Court shares IPC's concern regarding "the potential need to conduct mini-trials with regard to each" of the seven employees, even if only the 30(b)(6) deposition is presented. *See Hodge v. Mayer Unified Sch. Dist. No. 43 Governing Bd.*, No. 05-15577, 2007 WL 1112954, at *1 (9th Cir. Apr. 13, 2007). Finally, as explained above, none of these seven employees is sufficiently similar to Hathaway as to overcome the confusion and delay caused by these potential mini-trials. For all of these reasons, the Court GRANTS the Motion in Limine.

## V. ORDER

IT IS ORDERED:

1. IPC's Motion in Limine to Exclude Purported "Other Acts" Evidence (Dkt. 57) is GRANTED.

2. IPC's Expedited Motion for Extension of Time to File Response/Reply (Dkt. 76) is DENIED AS MOOT.

DATED: December 8, 2017

_____
David C. Nye
U.S. District Court Judge