Bradley J Williams, ISB No. 4019
Amy A. Lombardo, ISB No. 8646
PARSONS BEHLE & LATIMER
900 Pier View Drive, Suite 206
Post Office Box 51505
Idaho Falls, Idaho  83405
Telephone  (208) 522-6700
Facsimile  (208) 522-5111
BWilliams@parsonsbehle.com
ALombardo@parsonsbehle.com

Attorneys for Idaho Pacific Corporation

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROSS HATHAWAY,<br><br>     Plaintiff,<br><br>vs.<br><br>IDAHO PACIFIC CORPORATION,<br><br>     Defendant. | Case No. 4:15-CV-00086-BLW<br><br>**IDAHO PACIFIC'S TRIAL BRIEF** |

COMES NOW Defendant Idaho Pacific Corporation ("IPC" or "Idaho Pacific") and submits this Trial Brief pursuant to this Court's Order Resetting Jury Trial Order [Dkt. 141], and in anticipation of the trial of this matter scheduled for June 3-7, 2019.

## I.  INTRODUCTION AND BACKGROUND

Plaintiff Ross Hathaway ("Plaintiff" or "Hathaway") worked for Idaho Pacific from April 4, 2012, until April 18, 2013.  The company terminated Hathaway's employment because it was reported to management that Hathaway told a coworker he was going to throw himself down the stairs and injure himself in order to create a workers' compensation claim.

**DEFENDANT'S TRIAL BRIEF - 1**

Idaho Pacific determined that Hathaway's statement was contrary to its safety policies and procedures and its Code of Conduct, which required employees to act with honesty and integrity, and that the risk to the company of continuing to employ Hathaway under the circumstances was too great. The company investigated the report, found it to be credible, and terminated Hathaway the day after he made the statement.

Plaintiff's complaint alleges that: (1) Hathaway was fired for filing and/or following up on a worker's compensation complaint in contravention of public policy[1]; and (2) that he was discriminated[2] and retaliated[3] against because of his "disabilities" in violation of the Americans with Disabilities Act.

Legally, Hathaway's claims are insufficient. First, regarding his ADA discrimination claim, Hathaway cannot show that there is any causal nexus between any alleged disability and his termination. Thus, Hathaway will not be successful in proving that he was terminated because of a disability. Second, Hathaway cannot prove retaliation under the ADA because he has not alleged a protected activity, and there is similarly no causal connection between any protected activity and the adverse action. Third, on Hathaway's wrongful termination claim, there is no legal precedent to argue that termination for questioning the internal report of the company is in violation of Idaho's public policy. Similarly, Hathaway has insufficient evidence to establish that his termination was caused by his filing a workers' compensation claim, because he was terminated for threatening to intentionally harm himself at work.

---

[1] Wrongful Termination in Contravention of Public Policy.

[2] Count I, ADA Disability Discrimination; Count II, Violation of IHRA (same).

[3] Count III ADA Retaliation; Count IV Violation of IHRA (same).

**DEFENDANT'S TRIAL BRIEF - 2**

Hathaway has failed to adduce any direct evidence to support his claims, and the circumstantial evidence he relies upon is based on mere speculation.  The evidence will show that Hathaway was an at-will employee who could have been terminated for any legal reason, at any time, and that Hathaway was terminated in accordance with Idaho Pacific's reasonable safety and integrity policies, and to avoid any further risk of liability to the company.

## II.    ISSUES

(1) Whether Hathaway's termination violated the Americans with Disabilities Act and the Idaho Human Rights Act.  Specifically, whether Hathaway was terminated because of an alleged disability, or whether he was terminated for threatening to injure himself to manufacture a workers' compensation claim.

(2) Whether Hathaway's termination violated the Americans with Disabilities Act and the Idaho Human Rights Act.  Specifically, whether Hathaway was terminated in retaliation for engaging in a protected activity under the Act, for either (1) reporting injuries, (2) raising concerns about why his alleged shoulder injury was not included in an internal company document regarding his injuries, or (3) for requesting an accommodation for various work-related injuries.

(3) Whether Hathaway's termination was a permissible, at-will termination under Idaho law, or whether, as an exception to the at-will employment rule, Hathaway was terminated in contravention of Idaho's public policy.

### III.   LEGAL STANDARD

**A.   ADA DISCRIMINATION CLAIM – PLAINTIFF MUST PROVE THAT HATHAWAY WAS DISCRIMINATED AGAINST AS DEFINED BY THE ADA.**

To succeed on a claim under the Americans with Disabilities Act Amendment Act ("ADA") and the Idaho Human Rights Act[4], Hathaway's burden is to prove that he 1) had a physical impairment sufficient to be considered disabled within the meaning of the ADA, 2) was substantially limited in performing the essential functions of the job, with or without reasonable accommodation, and 3) was subjected to an adverse employment action because of his disability. Idaho Pacific contends that Hathaway cannot prove the first and third elements of the ADA test, because Hathaway does not have an injury sufficient to constitute a disability as that term is defined under the ADA, and because Hathaway cannot prove a causal nexus between his alleged disability and termination.  Hathaway was instead terminated for threatening to injure himself – a permissible, non-discriminatory grounds for termination.

**1.   IPC Did Not Unlawfully Discriminate Against Hathaway**

In this case, Hathaway cannot prove his discrimination claim because he will be unable to show at trial that he was terminated because of a disability.

**a.   Plaintiff Must Show that Hathaway's Injury(ies) Qualify as a Disability Under the ADA.**

Plaintiff is required to present clear proof regarding which condition constitutes a disability under the ADA, and appropriate legal authority illustrating that such condition

---

[4] Hathaway has asserted identical claims under the Idaho Human Rights Act. The 9th Circuit analyzes claims under the Idaho Human Rights act as it would a claim under the ADA. *See Ward v. Sorrento Lactalis, Inc.*, 392 F.Supp.2d 1187, 1190 n. 1 (D. Idaho 2005) (Courts interpret the standards for disability under the ADA and the IHRA identically).

**DEFENDANT'S TRIAL BRIEF - 4**

qualifies as a disability.  *See e.g. Weaving v. City of Hillsboro*, 763 F.3d 1106 (9th Cir. 2014).  A disability under the ADA is defined as a physical or mental impairment that substantially limits one or more major life activities of the individual claiming the disability.  42 U.S.C. § 12102(1); *Weaving* at 1111.  "An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability." *Id.* (citing 42 U.S.C. § 12102(4)(C).  EEOC regulations provide:

> An impairment is a disability… if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.  An impairment need not prevent or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. 29 C.F.R. § 1630.2(j)(l)(ii).  Determining whether an impairment is substantially limiting requires an individualized assessment. §1630.2(j)(l)(iv).

*Id.*

Thus, whether or not Hathaway suffered a disability within the ADA definition must be established by proof that Hathaway was limited in his ability to work or perform some other major life activity, compared to most people in the general population.  29 C.F.R. § 1630.2(j)(l)(ii).  A limitation is substantial if the disabled person is significantly restricted in performing a major life activity when compared to the average person in the general population, or is unable to do so. Factors to consider in deciding whether a major life activity is substantially limited include: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact of the impairment. *Id* (dissent, citing 9th Circuit jury instruction).

In *Weaving*, the Ninth Circuit reversed the district court's finding that a police officer with ADHD had a legally sufficient "disability" to justify a claim under the ADA.  The Court held that the "impairment" did not "substantially limit" the major life activities of working

**DEFENDANT'S TRIAL BRIEF - 5**

and interacting with others – even where the officer had recurring interpersonal problems which were attributable to the officer's ADHD. The Ninth Circuit opined that "[t]o hold otherwise would be to expose to potential ADA liability employers who take adverse employment actions against ill-tempered employees who create a hostile workplace environment for their colleagues."

While ADA guidance in recent years has instructed that the terms are to be broadly interpreted[5], Hathaway must present clear proof of what the alleged disability is and that the condition is "[a] physical or mental impairment that substantially limits one or more major life activities of an individual" under 29 C.F.R. § 1630.2(g)(1).

> **b.    Plaintiff Must Show That But For His Disability, He Would Not Have Been Terminated.**

In order to prove a claim for discrimination under the ADA, Hathaway is required to prove that he was subjected to an adverse employment action because of his disability.  *See* Proposed Jury Instruction No. 21.  (Model 9th Circuit Civil Jury Inst. 12.1A (2019)).

In order to prove this causation element, Hathaway must prove at trial that one of his injuries is the direct, actual, "but-for" cause for the decision to terminate. *See Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 177-78, 129 S.Ct. 2343 (2009) ("[a] plaintiff must prove…that age was the 'but-for' cause of the challenged employer decision."), *Bukiri v. Lynch,*

---

[5] The 2008 amendments to the ADA broadened the definition of "substantially limits" to encompass disabilities that "limit[ ] the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1). Notably, the 2008 amendments clarified that the term "shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." *Id.* Therefore, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id., Equal Employment Opportunity Commission v. United Postal Service Incorporated*, 2017 WL 3503676, at *3 (D.Ariz., 2017)

**DEFENDANT'S TRIAL BRIEF - 6**

648 F. App'x 729, 731 n. 1 (9th Cir. 2016)("we recognize that…circuits have retreated from the motivating factor standard of causation in ADA cases, which we [previously] endorsed…"), *Gentry v. East West Partners Club Management Co. Inc.*, 816 F.3d 228, 235-36 (4th Cir. 2016), *Palmquist v. Shinseki,* 689 F.3d 66 (1st Cir. 2012), *Lewis v. Humboldt Acquisition Corp.,* 681 F.3d 312 (6th Cir. 2012) (en banc), *Serwatka v. Rockwell Automation, Inc.,* 591 F.3d 957 (7th Cir. 2010), *see also Pulczinski v. Trinity Structural Towers, Inc*., 691 F.3d 996, 1002 (8th Cir. 2012), *Doe v. Bd. of Cty. Comm'rs. of Payne Cty.,* 613 Fed. Appx. 743, 747 n. 3 (10th Cir. 2015), *Wesley–Dickson v. Warwick Valley Cent. Sch. Dist.,* 586 Fed. Appx. 739, 745 n. 3 (2d Cir. 2014), 9th Cir. Civil Jury Instr. 12.0, *et. seq.* (2017). The United States Supreme Court recently held that it is "textbook tort law that an action 'is not regarded as a cause of an event if the particular event would have occurred without it.'" *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 347 (2013). In other words, if Hathaway would have been terminated for a legitimate reason anyway, plaintiff cannot meet its burden to show a but for cause. The motivating factor analysis does not apply. *Cf. Nassar*, 570 U.S. at 347 (rejecting the motivating factor analysis in an analogous context); *Gentry v. E.W. Partners Club Mgmt. Co.*, 816 F.3d 228 (4th Cir.2016); *Palmquist v. Shinseki*, 689 F.3d 66 (1st Cir.2012) (rejecting motivating factor under the ADA).

Reliance upon only the temporal proximity of Hathaway's injuries and his termination is insufficient proof at trial. *See Proudfoot v. Arnold Logistics, LLC*, 59 F.Supp.3d 697 (M.D. Pa. 2014) ("Discrimination animus may only be inferred from temporal proximity when the evidence presented is 'unusually suggestive' based upon the specific facts of the case."). Where a plaintiff fails to produce any actual evidence that a disability is the "but-for" cause in a termination, there can be no causation and plaintiff's claim must fail. *See Harris v.*

*Treasure Canyon Calcium Co.*, 132 F.Supp.3d 1228, 1237 (D. Idaho 2015) (Evidence submitted insufficient on causation where plaintiff had been asked the day before her termination when she could return to her pre-injury position of driving truck, and plaintiff responded it would be four to six months), *and see Keenan v. Toys "R" Us, Inc.*, Case No. 2:05–cv–00615–APG–VCF (D. Nev. February 21, 2014) (available at 2014 WL 1153697) (No liability on the part of employer where employer demonstrated that employee was terminated based upon interaction with customer, and not employee's mental disability).

Accordingly, Hathaway has the burden to prove that Idaho Pacific terminated him because of his purported disability.  *See Curley v. City of North Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014).  In order to show that an employee was terminated because of a disability, the employee must show that his disability was the direct, actual cause for the decision to terminate. *See Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005)(holding that the plain language of the statute in an ADEA context establishes the but-for standard, not the motivating factor test).  The temporal proximity of Hathaway's injuries and his termination are insufficient proof. *Proudfoot v. Arnold Logistics, LLC*, 59 F.Supp.3d 697 (M.D. Pa. 2014) ("Discrimination animus may only be inferred from temporal proximity when the evidence presented is 'unusually suggestive' based upon the specific facts of the case."),

Where a plaintiff fails to produce any actual evidence that a disability is the direct cause in a termination, there can be no causation and plaintiff's claim must fail.  *See Harris v. Treasure Canyon Calcium Co.*, 132 F.Supp.3d 1228, 1237 (D. Idaho 2015) (Evidence submitted insufficient on causation where plaintiff had been asked the day before her termination when she could return to her pre-injury position of driving truck, and plaintiff responded it would be four to six months),  *Keenan v. Toys "R" Us, Inc.*, Case No. 2:05–cv–00615–APG–VCF (D. Nev.

**DEFENDANT'S TRIAL BRIEF - 8**

February 21, 2014) (available at 2014 WL 1153697) (No liability on the part of employer where employer demonstrated that employee was terminated based upon interaction with customer, and not employee's mental disability).

Hathaway has no direct evidence of discrimination. Instead, he relies exclusively upon "temporal proximity;" that he disputed the contents of the Incident Report on one day, and then he was terminated the next day. However, temporal proximity alone is not enough to establish pretext, especially with the requirement of "but for" causation. See *Brown v. Capistrano Unified School District*, 1 F.Supp.3d 1029 (C.D. Cal. 2014) (Holding that temporal proximity, with nothing more, is insufficient to create issues of fact on causation.), s*ee also Brown v. City of Tucson*, 336 F.3d 1181, 1187-1188 9th Cir. (2003) (Plaintiff failed to create issues of material fact on pretext based upon temporal proximity, where plaintiff failed to controvert evidence supporting legitimate grounds for termination).

Hathaway may argue that IPC did not interview him and that the failure to do so shows that investigation was a "sham." However, the sole inquiry for the fact finder is whether IPC made a reasonably informed and considered decision before taking an adverse employment action. See *Hill v. Shoe Show, Inc.*, Case No. 13-2931-STA-cgc, slip op. p. 9 (W.D. Tenn. July 27, 2015) (available at 2015 WL 4527722) (The employer is not required to interview the employee or some or all of his witnesses.); *Duggan v. Sisters of Charity Providence Hospitals*, 663 F.Supp.2d 456, 470 n. 6 (D. S.C. 2009) (Employer's failure to interview plaintiff as part of investigation was not evidence of pretext.).

Nor is an employer required to conduct an investigation at all – "a company can completely shirk the reasoned practice of investigating allegations of wrongdoing before committing to a disciplinary decision." *Gallow v. Autozone, Inc.*, 952 F. sup. 441, 449 n. 6 (S.D.

**DEFENDANT'S TRIAL BRIEF - 9**

Tex. 1996).  Such a failure does not establish pretext. *Id.*

Hathaway was terminated for violating company policy for making allegations that he would endanger himself.  Hathaway alleges that he was terminated for being injured on the job, but he fails to provide any evidence to show the requisite causal link between his injuries and his termination. Hathaway has failed to point to any direct evidence that his hand or shoulder injury was the "but for cause" of his termination.

Instead, Hathaway was terminated for stating that he was going to injure himself. Idaho Pacific investigated these comments, found them credible, and terminated him because of the comments.  The Employee Handbook clearly prohibits this type of behavior and Idaho Pacific was well within its rights to terminate Hathaway based upon the comments.[6]

## 2.      IPC Had An At Will Legitimate, Nondiscriminatory Reason for Terminating Hathaway's Employment

Plaintiff will not be able to prove that any of his alleged disabilities were the cause of his termination.  Idaho Pacific will show that it had a legitimate, nondiscriminatory reason for terminating Hathaway's employment – namely, because he threatened to injure himself in order to manufacture a false workers' compensation claim.

In this case, there is no dispute that the following are legitimate reasons for terminating an employee: for threatening to injure himself, for threatening to manufacture an injury and resulting workers compensation claim, for posing a risk to the plant and the business

---

[6] Hathaway may also argue that the two warnings that he received were adverse employment actions and that he received them because of his disability.  However, those warnings were not adverse employment actions, because they did not change Hathaway's employment status.  *See Hoang v. Wells Fargo Bank*, 724 F.Supp.2d 1094, 1104 (D. Or. 2010) (a warning letter which affected no materially adverse change in the terms and conditions of employment was not an adverse employment action).  Moreover, even if they were adverse employment actions, Hathaway was terminated two weeks later on other grounds, so the requisite causal connection is also not present.

**DEFENDANT'S TRIAL BRIEF - 10**

or impacting employee morale.  Further, there is no dispute that in Idaho an employer may terminate an employee for any reason or no reason at all, subject to certain exceptions.

In determining whether a stated reason for termination is genuinely held, the jury may not consider whether the termination was accurate, wise, or well-considered.  It is not within the jury's province to second-guess the business decisions of employers.  "We do not sit as a superpersonnel department that reexamines an entity's business decision and reviews the propriety of the decision." *Cooper v. United Air Lines, Inc.*, 82 F.Supp.3d 1084, 1111 (N.D. Cal. 2015).

Instead, Idaho Pacific need only introduce evidence to show that its reasons for termination were "genuinely held." *See Fleming v. IASIS Healthcare Corp.*, 151 F.Supp.3d 1043, 1054 (D. Ariz. 2015) (The focus is whether the employer's stated reason for termination was honest, not whether it was accurate, wise, or well-considered); *Pacenza v. IBM*, 363 Fed.Appx. 128 (2d Cir. 2010) (Company set forth legitimate, nondiscriminatory reason for terminating employee when employee violated company policy).

Whether or not Hathaway actually made the statement or intended to carry out the threat is irrelevant.  Even if the fact-finder were convinced that Hathaway did not make the alleged statements, Idaho Pacific cannot be found in violation of the ADA as long as it provides evidence that the company genuinely believed the statement was made.  Thus, Idaho Pacific will show a legitimate, nondiscriminatory reason for the termination, because the evidence will be that Hathaway was terminated for his threatening, dishonest, and disruptive statements. *Arnold v. Pfizer*, 970 F.Supp.2d 1106, 1138 (D. Or. 2013) ("The court recognizes that where an employer holds a good faith belief that a termination is valid, the employer cannot be liable when it is later revealed that the basis for termination was actually invalid.").

**DEFENDANT'S TRIAL BRIEF - 11**

### 4. Hathaway Cannot Show That Idaho Pacific Had Any Pattern or Practice of Discrimination.

A plaintiff can prove discrimination, retaliation, or pretext by showing a pattern or practice of treating similarly situated employees. A similarly situated employee is one who "engaged in conduct similar to that of plaintiff" and who is similar to the plaintiff "in all material respects.". *Baldyga v. City of New Britain*, 554 F.Supp.2d 268, 277 (D. Conn. 2008); *Beck v. UFCW, Local 99*, 506 F.3d 874, 885 (9th Cir. 2007). Likewise,

> "[A] pattern or practice of discriminating" against a particular protected group or characteristic does not consist of "isolated or sporadic discriminatory acts by the employer." '[I]t must be established … that '[the impermissible] discrimination was the company's…regular rather than the unusual practice.'" [] "Anecdotes about other employees cannot establish that discrimination was a company's standard operating procedure…"[T]estimony from...employees who had different supervisors than plaintiff, who worked in different parts of the employer's company, or whose terminations were removed in time from plaintiff's termination cannot be probative of whether [the protected characteristic] was a determinative factor in the plaintiff's discharge.

*Carroll v. Sanderson Farms, Inc.*, Case No. H-10-3108, slip op. p. 17 (S.D. Tex. September 5, 2012) (available at 2012 WL 3866886).

However, as more fully described within IPC's Motion *in Limine* to Exclude Purported "Other Act" Evidence, filed in the first trial, which IPC fully incorporates herein, the isolated evidence Hathaway gleans from other employee files fails to show that IPC has a "clear disdain for injured employees who file workers compensation claims." *See* Motion in Limine to Exclude Purported Other Acts Evidence [Dkt 57], filed November 15, 2017.

**DEFENDANT'S TRIAL BRIEF - 12**

**B.     ADA RETALIATION CLAIM – PLAINTIFF MUST SHOW THAT IDAHO PACIFIC UNLAWFULLY RETALIATED AGAINST HATHAWAY**

Hathaway also alleges that Idaho Pacific unlawfully retaliated against him, in violation of the ADA and the Idaho Human Rights Act, because he was subject to the adverse employment action of termination.  Hathaway also alleges that adverse employment action occurred because he sought treatment for his injuries and because he asked the company to change an injury Incident Report, as his claim as written was not a worker's compensation injury.

42 U.S.C. § 12203(a) states that an employer cannot discriminate against an individual who has opposed an act or practice made unlawful under the ADA.  To succeed on a retaliation claim under the ADA or the IHRA, Plaintiff must prove that: (1) he engaged in a protected activity; (2) IPC knew he was involved in a protected activity; (3) an adverse action was taken against him; and (4) a causal connection exists between the protected activity and the adverse action.  Idaho Pacific contends that Hathaway cannot prove elements one, two, or four because Hathaway has not and cannot allege any protected activity, and therefore there can be no knowledge of that protected activity nor causal connection from the activity to the termination.

**1.     Protected Activity and Idaho Pacific's Knowledge**

First, Hathaway did not engage in a protected activity. At trial, Hathaway testified that he engaged in a protected activity by: 1) reporting his work-related injuries and disability associated with his shoulder and arm injury; 2) raising concerns about his shoulder missing from the Incident Report; and 3) requesting accommodation for his disability arising from his work-related injuries. However, the mere filing of a workers' compensation claim is not a protected activity under the ADA. *See Kendell v. Donahoe*, 913 F.Supp.2d 186 W.D. Pa. 2012); *Arnold v.*

**DEFENDANT'S TRIAL BRIEF - 13**

*Pfizer*, 970 F.Supp.2d 1106, 1140-1141 (D. Or. 2013). Reporting a work injury or disputing the contents of a company report are likewise not protected under the ADA.

Hathaway's only allegation that would arguably fall within the statute would be if Idaho Pacific discriminated against him because he had asked for an accommodation. The evidence at trial was (and will be) that Idaho Pacific provided accommodations to Hathaway when he let Carrie Dimos know that his injuries were bothering him.  The evidence at trial was (and will be) that Hathaway was given light duty work. There is no evidence to support a claim that IPC ever denied Hathaway an accommodation, and Hathaway candidly admitted he was never denied an accommodation.

Hathaway's other allegation deals with his alleged report of the February shoulder injury to Safety Director Dwain Gotch and then his follow-up in April when he discovered that his shoulder injury was not contained in the report. Even if the Court were to assume the truth of Hathaway's statement, it does not rise to the level of protected activity.

Hathaway may argue that his actions in raising a complaint fall under the first portion of the statute, "oppos[ing] any act or practice made unlawful by this chapter…," but the reporting of his work injury and the dispute over the contents of the internal company report do not constitute the "opposition of an act or practice made unlawful" under the ADA. Simply put, Hathaway did not engage in protected activity when he complained about the report.

### 2.      No Causal Link Between Alleged Protected Activity and Termination.

Where Hathaway has not alleged any protected activity, there cannot be a causal link between the activity and his termination.

Further, Hathaway admits that IPC granted his accommodations, when he states that "[a]lthough IPC granted simple accommodations [for Hathaway's injuries], it was already

**DEFENDANT'S TRIAL BRIEF - 14**

increasing its scrutiny of Hathaway to find a reason to terminate him."  Hathaway must prove that <u>but for</u> his request for an accommodation, he would not have been terminated.  There is no evidence to support this theory. Indeed, there is no evidence that Hathaway even ever asked for an accommodation.

Hathaway argued in his Complaint that: 1) IPC has a "pattern of increasing scrutiny of employees after they are injured"; 2) IPC employees can only miss seven days per season no matter the reason; 3) IPC's reason for terminating Hathaway was pretext; and 4) temporal proximity. Again, beyond the summary judgment stage, it's Hathaway's burden to show that he was terminated because he engaged in protected activity.  The Supreme Court has clearly articulated that a mixed motive standard cannot apply in a retaliation context. *Cf. University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013) (rejecting a motivating factor standard in Title VII retaliation in an opinion that cannot be distinguished from the ADA statute). Thus, Idaho Pacific has given a legitimate reason for the termination. At trial, the evidentiary threshold to show pretext is higher than the *prima facie* stage, and the plaintiff must now produce "specific, substantial evidence" of pretext. *Fleming v. IASIS Healthcare Corp.*, 151 F.Supp.3d 1043, 1053 (D. Ariz. 2015). Hathaway does not have evidence to support any of the above allegations which he alleged at the time of filing his Complaint.

### C.   WRONGFUL TERMINATION CLAIM – HATHAWAY MUST SHOW THAT HE WAS TERMINATED IN VIOLATION OF A SPECIFIC ACT WHICH VIOLATED IDAHO PUBLIC POLICY.

Hathaway cannot prove to a jury that he was terminated in violation of Idaho public policy.  In Count V of his complaint, Hathaway alleges that he was terminated in contravention of public policy.  Specifically, Hathaway claims that "IPC terminated him as a result of Hathaway reporting his work-related injuries, voicing concerns regarding the

**DEFENDANT'S TRIAL BRIEF - 15**

inaccuracies in the incident report of workplace injury, and seeking medical assistance for a workplace injury."  Pl.'s Compl. ¶ 86.  As will be discussed more fully below, there is no admissible evidence, either direct or circumstantial, to support these allegations.

The law is well established in Idaho that the employer or an employee at-will may terminate the relationship at any time for any reason without incurring liability, unless the motivation for determination contravenes public policy. *Ray v. Nampa Sch. Dist. No. 131*, 120 Idaho 117, 120, 814 P.2d 17, 20 (1991); *MacNeil v. Minidoka Mem'l Hosp.*, 108 Idaho 588, 589, 701 P.2d 208, 209 (1985) *abrogated on other grounds*.  The public policy exception to the employment at will doctrine was first established in Idaho in the case of *Jackson v. Minidoka Irrigation District*, 98 Idaho 330, 563 P.2d 54 (1977), wherein the court stated:

> The employment at will rule is not, however, an absolute bar to a claim of wrongful discharge.  As a general exception to the rule allowing either the employer or the employee to terminate the employment relationship without cause, an employee may claim damages for wrongful discharge when the motivation for the firing contravenes public policy.

98 Idaho at 33, 563 P.2d at 57.

In *Crea v. FMC Corp.*, 135 Idaho 175, 16 P.3d 272 (2000), the plaintiff asserted that he was discharged for uncovering and reporting evidence that his employer was involved in illegal activities such as contaminating the environment with arsenic and covering up multiple environmental violations. *Id.* at 177, 16 P.3d at 274.  On appeal from dismissal of his claims the Idaho Supreme Court noted that Crea's claim, if true, could fall under the public policy exception to the at-will employment doctrine since the exception had been held to protect employees who investigate, discover, and report criminal activity.  *Id.* at 178, 16 P.3d at 275. The court noted that in making that determination, although disputed, the court was forced to assume that FMC attempted to cover up unlawful environmental dealings.  *Id.*

**DEFENDANT'S TRIAL BRIEF - 16**

However, the court also ruled that in order to avoid summary judgment, Crea had to provide evidence of a "link" between any company cover-up and his own termination. *Id.* The court noted that Crea had failed to provide evidence of that link, other than attempting to do so by pure speculation. *Id.* Further, the court stated that although reasonable inferences must be drawn in favor of Crea if there had been facts to support those inferences, Crea had failed to establish any facts giving rise to reasonable inferences linking the termination to Crea's discovery and dissemination to FMC supervisors of the contamination documents. *Id.* at 179, 16 P.3d at 276.

Similarly, in *Mallonee v. Idaho Department of Correction*, 139 Idaho 615, 84 P.3d 551 (2004), the plaintiff asserted that he was discharged in violation of public policy because his employer, the Department of Correction, fired him to impede or obstruct a department investigation. *Id.* at 620, 84 P.3d at 556. On appeal from dismissal of this claim, the Supreme Court observed that in responding to the department's summary judgment motion on the wrongful discharge claim, Mallonee was required to make an evidentiary showing that his discharge was motivated by his employer's intent to delay or obstruct an ongoing investigation. *Id.* at 621, 84 P.3d at 557. The court ruled that the only evidence presented by Mallonee was his "suspicion" that his employer's actions were intended to delay or deflect further investigation. *Id.* The Supreme Court ruled that such speculation was insufficient to raise a triable issue of fact. *Id.*

As stated above, Hathaway's complaint alleges that IPC terminated him because: (1) he reported his work-related injuries; (2) he voiced concerns regarding inaccuracies in the incident report of workplace injury; and (3) he sought medical assistance for a workplace injury. At the outset, the Idaho Supreme Court has made clear that allegations in a complaint are

**DEFENDANT'S TRIAL BRIEF - 17**

insufficient as mere conclusions in the absence of any facts supporting such charges.  *Ayers v. Gen. Hosp.*, 67 Idaho 430, 182 P.2d 958 (1947); *Ray v. Nampa Sch. Dist. No. 131*, 120 Idaho 117, 121, 814 P.2d 17, 21 (1991).  Moreover, the alleged facts must present more than a mere scintilla of evidence supporting the parties' position.  *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 808 P.2d 851 (1991).

Here, there is no question that Idaho courts have recognized a viable claim for termination in violation of public policy when an employee is fired because he <u>filed</u> a workers' compensation claim.  *See, Jackson v. Minidoka Irrigation District*, 98 Idaho 330, 563 P.2d 54 (1977).  However, there will be no evidence in this case that Idaho Pacific terminated Hathaway <u>because</u> he filed a workers' compensation claim.  On the contrary, the undisputed evidence presented to the jury was that Idaho Pacific actually filed the workers' compensation claim for Hathaway related to his February 19, 2013 slip-and-fall incident, when Lori Steele filed the First Injury Report with Liberty Mutual on March 29, 2013.

After that occurred, Liberty Mutual controlled the claim, and ultimately Liberty Mutual made the decisions regarding coverage under the policy.  It is undisputed that eventually Liberty Mutual did pay for all of Hathaway's expenses related to the shoulder injury.

Hathaway may have subjectively believed that the incident report for the February 19, 2013 incident needed to be modified to include his shoulder in order for Liberty Mutual to cover the claim.  However, that mistaken belief is irrelevant because Liberty Mutual ultimately did pay the claim despite the fact that the incident report did not mention the shoulder.  In any event, it was undisputed that the incident report itself was a private, internal company document used in order to further investigations for safety purposes regarding accidents and also to report

**DEFENDANT'S TRIAL BRIEF - 18**

injuries.  The Incident Report that Hathaway alleges is "missing" was not in any way required or necessary in order for Hathaway to file or pursue a workers' compensation claim.

A wrongful termination claim in Idaho is based upon "public policy," as embodied by the Constitution and Idaho statutes.  *See, MacNeil v. Minidoka Memorial Hospital*, 108 Idaho 588, 589, 71 P.2d 208, 209 (1985); *Crea v. FMC Corp.*, 135 Idaho 175, 16 P.3d 272 (2000).  A claim for violation of public policy cannot be predicated upon a private, internal company document such as an incident report.  Thus, even if the jury finds that Hathaway was terminated for raising complaints about the incident report, that would be insufficient, as a matter of law, to establish that the termination was in violation of public policy.  There is simply no evidence to demonstrate that Idaho Pacific terminated Hathaway because they wanted to avoid the "medical costs associated with his injuries." Idaho Pacific had workers' compensation coverage through Liberty Mutual—and the claim occurred during the time Hathaway was employed by Idaho Pacific – so the company would not avoid any medical costs at all by firing him. Moreover, once Hathaway filed the workers' compensation claim, the decision of whether or not to cover the claim was up to Liberty Mutual.  There is no evidence that IPC did or said anything that had any impact on their decisions and, to the contrary, Liberty Mutual makes the decisions about coverage, not Idaho Pacific.

In this case,  Hathaway was an at-will employee.  Hathaway was not hired for a specified term, nor is there any evidence of an express or implied contract that limited the reasons for which Hathaway could be discharged.   The at-will doctrine doesn't prohibit terminations because the employee thinks the termination is unjustified.  Even assuming that Hathaway truly perceived that he was "unjustly fired" those reasons would not, as a matter of law, constitute a violation of public policy.

**DEFENDANT'S TRIAL BRIEF - 19**

DATED this 6th day of May 2019.

PARSONS BEHLE & LATIMER

By _ /s/ Amy A. Lombardo_
    Bradley J Williams
    Amy A. Lombardo
    Attorneys for Idaho-Pacific Corporation

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 6th day of May, 2019, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**DeAnne Casperson, Esq.**
**Amanda E. Ulrich, Esq.**
dcasperson@holdenlegal.com
aulrich@holdenlegal.com
*Attorneys for Ross Hathaway*

_/s/ Amy A. Lombardo_____
Amy A. Lombardo

4830-4098-2917v5

**DEFENDANT'S TRIAL BRIEF - 1**