DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROSS HATHAWAY,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>IDAHO-PACIFIC CORPORATION,<br><br>　　　　　　Defendant. | Case No. 4:15-CV-00086-DCN<br><br>**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, Ross Hathaway, by and through his counsel of record Casperson Ulrich Dustin PLLC and as a cause of action against Defendant Idaho-Pacific Corporation alleges and complains as follows:

**JURISDICTION AND VENUE**

1. This is an action brought under the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12101, *et seq.*; the Idaho Human Rights Act ("IHRA"), Idaho Code § 67-5901, *et seq.*; and the common and statutory law of the state of Idaho.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 1332, 1343, and 1367; and 42 U.S.C. § 12117.

3.     Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose, in this judicial district; and venue also properly lies in this district pursuant to 42 U.S.C. § 12117 because the unlawful employment practices were committed in this judicial district.

## PARTIES

4.     Plaintiff Ross Hathaway ("Hathaway") is a male citizen and a resident of the United States of America, who resides in Idaho Falls, Idaho.

5.     Defendant Idaho-Pacific Corporation ("Idaho-Pacific") is an Idaho corporation with its principal place of business located in Rigby, Idaho.

6.     At all times material to this Complaint, Idaho-Pacific regularly employed fifteen or more persons, and was engaged in an industry affecting commerce, bringing Defendant within the ambit of Idaho Code §§ 18-7301 and 67-5901, *et seq.*; 42 U.S.C. § 2000e, *et seq.*; and 42 U.S.C. § 12111.

## FACTS COMMON TO ALL COUNTS

7.     Hathaway realleges and incorporates by reference paragraphs 1 through 6 above, as though fully incorporated herein.

8.     Hathaway began working for Idaho-Pacific on or about April 4, 2012, and worked at Idaho-Pacific's plant located in Ririe, Idaho.

9.     At all times he was employed by Idaho-Pacific, Hathaway performed his job duties in a satisfactory manner.

10.    On or about February 19, 2013, while working at Idaho-Pacific, Hathaway slipped on loose potato granules and injured his left hand, thumb, and shoulder.

11.     Hathaway immediately reported the accident and injury to his direct supervisor, Kelsey Erickson ("Erickson"), and the safety supervisor, Dwain Gotch ("Gotch").

12.     Hathaway was provided an ice pack for his left hand and thumb.  Gotch took Hathaway back out to the work area where the accident occurred so Gotch could complete an incident report.

13.     Gotch completed the report by hand and then instructed Hathaway to return to work. Hathaway finished his shift.

14.     Later that evening Hathaway's shoulder began to swell and Hathaway was experiencing significant pain in his shoulder.

15.     During the next few days Hathaway complained of and reported his shoulder pain to one of his supervisors, Carrie. Hathaway told Carrie that he was not able to perform palletizing or casing-off, both of which require heavy lifting, due to his shoulder pain.

16.     Carrie moved Hathaway to a different job task, weighing cans, and told him to report to his shoulder pain to Gotch.

17.     Hathaway did as he was instructed and reported to Gotch that he was having pain in his left shoulder. However, Gotch told him to come back later to discuss his shoulder pain.

18.     Later that day, at the end of Hathaway's shift, Hathaway went to discus his shoulder pain with Gotch, but Gotch had already left for the day

19.     Hathaway went back two days later to report the shoulder pain to Gotch, but he was not able to find Gotch.

20.     Hathaway continued to seek out Gotch regarding his shoulder pain but was unable to locate him.

21.     Hathaway continued to experience pain in his left shoulder and began to develop issues with his left arm and hand as well.  Hathaway continued to work, performing the job task of

weighing cans, due to the fact that he continued to be unable to engage in any job tasks requiring heavy lifting.

22.     On or about March 21, 2013, while at work, Hathaway's left hand, arm, and upper body began cramping and seizing. One of Hathaway's co-workers saw what was happening to Hathaway and went to get Carrie. Unsure of what to do, Carrie retrieved Erickson and the plant manager, Steve McLean ("McLean").

23.     Hathaway's left hand, arm, and upper body continued cramping for approximately 20 minutes, at which point McLean drove Hathaway to Community Care, an urgent care facility in Rigby, Idaho.

24.     Hathaway was seen by one of the physician assistants at Community Care.

25.     When Hathaway filled out the intake paperwork at Community Care, Hathaway disclosed he was hypoglycemic. Hathaway also disclosed he had fallen at work a few weeks earlier and had pain and numbness in his left arm, hand and shoulder since the fall.

26.     Community Care conducted numerous tests, including urinalysis, metabolic blood panel, A1C, and blood sugar analysis.

27.     On information and belief, Idaho-Pacific obtained Hathaway's personal, confidential medical information, including information indicating Hathaway suffers from hypoglycemia.

28.     On or about March 22, 2013, the following day, Hathaway returned to the Community Care for a follow-up visit. Hathaway explained to the physician that he had fallen at work a few weeks earlier, and had pain and numbness in his left arm, hand, and shoulder since the fall at work on February 19, 2013. The doctor referred Hathaway to a neurologist and internist, and imposed a five (5) pound lifting restriction.

29.     Subsequently, Erickson and McLean told Hathaway that his fall in February had been due to Hathaway having a hypoglycemic event, not due to slipping on potato granules. Hathaway informed Erickson and McLean they were incorrect, as he did not pass out and did slip on potato granules. Hathaway explained he has never lost consciousness due to his hypoglycemia.

30.     On or about March 28, 2013, Hathaway returned to Community Care for a follow-up visit. The physician who saw Hathaway determined the pain and cramping Hathaway had experienced on March 21, 2013, was related to the fall at work that occurred on February 19, 2013, and was unrelated to hypoglycemia.

31.     On or about April 2, 2013, Hathaway was again injured at work. The box-taper Hathaway was operating was malfunctioning because it was being run at too high a speed.  Hathaway's coworker turned the speed down several times so the box-taper would operate properly, but Erickson turned the speed up each time the coworker turned it down, telling Hathaway he was moving too slowly.  When Hathaway attempted to fix the malfunction while the box-taper was running at high speed at Erickson's insistence, Hathaway's forearm was punctured by the tape-guard.

32.     Hathaway reported the incident and injury immediately to Carrie.

33.     Hathaway was taken to Idaho-Pacific's in-house laboratory for first-aid treatment. While one of the laboratory technicians was bandaging Hathaway's wound, McLean and Gotch entered the laboratory to inquire about Hathaway's injury. When the laboratory technician was finished bandaging Hathaway's wound, Gotch took Hathaway out to where the injury occurred and completed an incident report by hand.

34.   Idaho-Pacific directed Hathaway to return to work without any other medical attention from a health care provide.  Hathaway finished his shift that day, although the wound continued to bleed.

35.   That evening while driving home, Hathaway's wound was very painful and would not stop bleeding. After arriving home, Hathaway's family members were concerned about the appearance of the wound and the fact that it would not stop bleeding.

36.   Hathaway decided to seek medical attention at the emergency room at Eastern Idaho Regional Medical Center ("EIRMC") in Idaho Falls, where Hathaway resides.

37.   The emergency room staff at EIRMC were surprised that Hathaway was not instructed by his employer to seek immediate medical attention because the type of puncture wound he had typically requires a tetanus shot.

38.   At EIRMC, Hathaway's wound was cleaned and wrapped, and Hathaway received a tetanus shot. Hathaway was also prescribed an antibiotic because the wound was infected.

39.   The following day Hathaway's puncture wound was still very painful. Hathaway called in to work to inform Idaho-Pacific that he was unable to work that day due to the puncture wound and associated pain.  He also reported that he had been forced to go to the emergency room the night before because his puncture wound would not stop bleeding.

40.   On or about April 4, 2013, Hathaway returned to work. That same day Hathaway was called into McLean's office and given two Employee Warning Notices.

41.   The first Employee Warning Notice was dated April 2, 2013, and stated that Hathaway had two accidents and one incident for which he had to seek medical attention in the prior two months, and that he needed to slow down.

42.   The second Employee Warning Notice was dated April 4, 2013, and stated that Hathaway had sought unauthorized medical attention for a minor work-related accident.

43.   On or about April 8, 2013, Hathaway went back to the Community Care because of the continuing pain and numbness in his left hand, arm, and shoulder.

44.   Hathaway explained to the physician assistant whom he saw that he had not heard from any neurologists regarding scheduling an EMG, and had understood from his last visit to Community Care regarding the issues with his left hand, arm, and shoulder, that he would be contacted by a neurologist to schedule an EMG.  To date, no further evaluation of his should injury has been done, and he continues to have significant pain and problems with his shoulder.

45.   Hathaway continued to work with his shoulder pain and numbness.

46.   Hathaway continued to have issues with his left arm and hand. On April 15, 2013, the pain and numbness necessitated another visit to Community Care for treatment. The doctor whom Hathaway saw imposed a 5 pound lifting restriction on Hathaway.

47.   On or about April 17, 2013, a co-worker approached Hathaway and asked him how his worker's compensation claim was going.  The co-worker noted that she had seen the incident report and that there was no mention of the shoulder injury in the incident report.

48.   Hathaway was shocked the information about his shoulder injury was missing from the incident report and at the fact his co-worker knew it was missing.

49.   The same day, during his lunch hour, Hathaway asked Gotch to provide him with a copy of the February 19, 2013, incident report.   Just as Hathaway's co-worker had stated, Hathaway's shoulder injury was not included in the type February 19, 2013, official incident report.

50.  Hathaway contacted Gotch and asked why the information was missing from the incident report.  Gotch agreed that the information about Hathaway's shoulder being injured was not included in the report.

51.  Gotch told Hathaway he would have to talk with Idaho-Pacific's worker's compensation representative because Gotch had provided the report to the representative.

52.  Hathaway went to the worker's compensation representative's office and asked why the information regarding his shoulder injury on February 19, 2013, was not in the incident report.

53.  The representative's explanation was that the only information he had was what was included in the report, and attempted to take Hathaway's copy of the report from him.

54.  The next day, April 18, 2013, Hathaway was called into the Idaho-Pacific office and provided a short, typed statement by his supervisors that read as follows:

> It has been reported to us that you had told an individual that you "should trip and fall" as to cause an accident/injury. This comment is from an individual who is reliable, and we have no reason to doubt. Comments of these sort are taken very seriously. These comments create concern for your safety and the safety of others. Because of this we are choosing to separate employment with you effectively immediately.

55.  The allegations in the statement given to Hathaway were completely false.

56.  Hathaway was told by his supervisors he was being terminated as a result of the comment he allegedly made to the "reliable individual."

57.  Hathaway asked who reported the false allegations, but his supervisors refused to tell him.

8 - AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

58.     On or about January 24, 2014, Hathaway filed a Charge of Discrimination with the Equal

        Employment Opportunity Commission ("EEOC"), which was dually filed with the Idaho

        Human Rights Commission.

59.     Hathaway received his Notice of Right to Sue on or about December 15, 2014. A true and

        correct copy of Hathaway's Notice of Right to Sue is attached hereto as Exhibit A.

        Hathaway has exhausted his administrative remedies.

**COUNT I**
**VIOLATION OF THE AMERICANS WITH**
**DISABILITIES ACT AMENDMENTS ACT**
**DISABILITY DISCRIMINATION**

60.     Hathaway realleges and incorporates by reference paragraphs 1 through 59 above, as though

        fully incorporated herein.

61.     At all times relevant hereto, Hathaway had a disability as defined by the ADAAA.

62.     Hathaway has a physical impairment to his left shoulder, arm, and hand causing pain and

        numbness, and a record of such impairment.   Additionally, Hathaway suffers from

        hypoglycemia.

63.     Hathaway's physical impairments and record of such impairments substantially limited his

        major life activities, including performing manual tasks, such as lifting and reaching.

64.     Hathaway was a qualified individual under the ADAAA, i.e., an individual who, with or

        without reasonable accommodation, could perform the essential function of the position he

        held.

65.     Idaho-Pacific took adverse employment actions against Hathaway based upon one or more

        of his disabilities, including termination of Hathaway's employment.   As a direct and

        proximate result of Idaho-Pacific's actions and/or failures to act, Hathaway has suffered and

        will continue to suffer emotional distress consisting of outrage, shock, and humiliation,

based upon the discrimination he suffered. Further, Hathaway has suffered a loss of earnings and other employment based job opportunities. Hathaway is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any equitable remedies available to him.

66.     Idaho-Pacific's conduct was malicious and oppressive, and done with reckless disregard for Hathaway's federally protected rights for which Hathaway is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## COUNT II
## VIOLATION OF THE IDAHO HUMAN RIGHTS ACT
## DISABILITY DISCRIMINATION

67.     Hathaway realleges and incorporates by reference paragraphs 1 through 66 above, as though fully incorporated herein.

68.     Idaho-Pacific violated the IHRA, Idaho Code § 67-5901, *et seq.*, by discriminating against Hathaway based upon his disability or disabilities.

69.     As a direct and proximate result of Idaho-Pacific's actions and/or failures to act, Hathaway has suffered and will continue to suffer emotional distress consisting of outrage, shock, and humiliation, based upon the discrimination he suffered. Further, Hathaway has suffered a loss of earnings and other employment based job opportunities. Hathaway is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any equitable remedies available to him.

70.     Idaho-Pacific's conduct was malicious and oppressive, and done with reckless disregard for Hathaway's rights for which Hathaway is entitled to punitive damages pursuant to Idaho Code § 67-5908.

## COUNT III
## VIOLATION OF THE AMERICANS WITH
## DISABILITIES ACT AMENDMENTS ACT
## RETALIATION

71.   Hathaway realleges and incorporates by reference paragraphs 1 through 70 above, as though fully incorporated herein.

72.   Hathaway engaged in protected activity by reporting his work-related injuries and disability associated with his shoulder and arm injury, raising concerns of information regarding his work-related injuries missing from a work-related injury incident report, and requesting accommodation for his disability arising from his work-related injuries.

73.   Idaho-Pacific subjected Hathaway to adverse employment actions subsequent to Hathaway engaging in protected activity, including issuance of disciplinary actions and terminating Hathaway's employment.

74.   Such adverse actions constitute retaliation against Hathaway for engaging in protected activity.

75.   As a direct and proximate result of Idaho-Pacific's actions and/or failures to act, Hathaway has suffered and will continue to suffer emotional distress consisting of outrage, shock, and humiliation, based upon the discrimination he suffered. Further, Hathaway has suffered a loss of earnings and other employment based job opportunities. Hathaway is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any equitable remedies available to him.

76.   Idaho-Pacific's conduct was malicious and oppressive, and done with reckless disregard for Hathaway's federally protected rights for which Hathaway is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

**COUNT IV**
**VIOLATION OF THE IDAHO HUMAN RIGHTS ACT**
**RETALIATION**

77.  Hathaway realleges and incorporates by reference paragraphs 1 through 76 above, as though fully incorporated herein.

78.  Hathaway engaged in activity protected by Idaho law as previously set forth.

79.  Hathaway suffered adverse employment actions when he was issued disciplinary actions and was terminated from his employment.

80.  Such adverse action constitutes retaliation against Hathaway for engaging in protected activity.

81.  As a direct and proximate result of Idaho-Pacific's actions and/or failures to act, Hathaway has suffered and will continue to suffer emotional distress consisting of outrage, shock, and humiliation, based upon the discrimination he suffered. Further, Hathaway has suffered a loss of earnings and other employment based job opportunities. Hathaway is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any equitable remedies available to him.

82.  Idaho-Pacific's conduct was malicious and oppressive, and done with reckless disregard for Hathaway's rights for which Hathaway is entitled to punitive damages pursuant to Idaho Code § 67-5908.

**COUNT V**
**WRONGFUL TERMINATION IN CONTRAVENTION**
**OF PUBLIC POLICY**

83.  Hathaway realleges and incorporates by reference paragraphs 1 through 82 above, as though fully incorporated herein.

84.   Hathaway engaged in protected activity when he reported work-related injuries and/or a disability, and sought medical treatment for a work-related injury.

85.   Hathaway also engaged in protected activity by raising concerns regarding Idaho-Pacific's failure to provide accurate information regarding his work-related injuries on the worker's compensation incident report.

86.   Idaho-Pacific terminated Hathaway as result of Hathaway reporting his work-related injuries, voicing concerns regarding the inaccuracies in the incident report of workplace injury, and seeking medical assistance for a workplace injury.

87.   Idaho-Pacific violated the public policy of the State of Idaho by its retaliatory actions.

88.   As a direct and proximate result of Idaho-Pacific's actions and/or failures to act, Hathaway has suffered and will continue to suffer a loss of earnings and other employment based job opportunities. Hathaway is thereby entitled to damages, such amount to be proven at trial, as well as other equitable remedies available to him.

89.   Idaho-Pacific's actions were oppressive, fraudulent, malicious or outrageous entitling Hathaway to seek punitive damages.

## ATTORNEY'S FEES

90.   As a further direct and proximate result of Idaho-Pacific's actions and/or failures to act, Hathaway has been compelled to retain the services of counsel, and has thereby incurred and will continue to incur costs and attorney's fees which should be required to be paid by Idaho-Pacific pursuant to Idaho Code §§ 12-120 and 12-121; 42 U.S.C. § 12205; and 42 U.S.C. § 2000e-5(k), *et seq.*

**DEMAND FOR JURY TRIAL**

Hathaway demands trial by jury as to all issues triable to a jury in this action.

**PRAYER FOR RELIEF**

WHEREFORE, Hathaway seeks judgment against Idaho-Pacific as follows:

1.      For compensatory and general damages as well as statutorily available damages in an

amount as shall be proven at trial, and any available equitable remedies;

2.      For punitive damages under both federal and state law;

3.      For attorney's fees pursuant to statute and costs of suit; and

4.      For such other and further relief as the Court deems just and proper.


Dated this 27th day of September, 2019.

_____/s/_____

DeAnne Casperson
CASPERSON ULRICH DUSTIN PLLC

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of September, 2019, I filed the foregoing electronically through the CM/ECF system, which causes the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

**DOCUMENTS SERVED:**   **AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

**ATTORNEYS SERVED:**

Bradley J. Williams
Amy A. Lombardo
PARSONS BEHLE & LATIMER
350 Memorial Drive, Suite 300
Idaho Falls, Idaho 83402
Email: bwilliams@parsonsbehle.com
       alombardo@parsonsbehle.com

                            /s/
                            DeAnne Casperson
                            CASPERSON ULRICH DUSTIN PLLC

C:\Users\Dana\Casperson Ulrich Dustin PLLC\Casperson Ulrich Dustin PLLC Team Site - Documents\Active Cases\17423 Hathaway\Pleadings\Complaint.AMEND.wpd:dg