UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROSS HATHAWAY | Case No. 4:15-cv-00086-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| IDAHO PACIFIC CORPORATION | |
| Defendant. | |

## I. INTRODUCTION

Pending before the Court are Plaintiff Ross Hathaway's Motions in Limine (Dkts. 156—59) and Defendant Idaho Pacific Corporation's ("IPC") Motions in Limine (Dkts. 146, 149, 161—63, 167)[1] and Motion for a Videoconference Hearing (Dkt. 208).[2]

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

---

[1] Despite filing all eight (8) of these motions on the same day, counsel chose to file their respective arguments in separate documents rather than all together in one document.

[2] IPC filed this motion as a Notice for a Request for Videoconferencing Hearing. The Court, at the request of Hathaway, and after reviewing prior discussions, converted this notice into a motion. Dkt. 209.

## II. BACKGROUND

On February 19, 2013, Hathaway claims to have slipped on potato granules, causing him to fall and injure his left thumb, hand, and shoulder. Hathaway reported the accident to Dwain Gotch, IPC's Plant Safety Manager. Gotch prepared a handwritten report detailing the accident, which Hathaway reviewed and signed ("Handwritten Report").

About a month later, on March 21, 2013, Hathaway went to Community Care, IPC's workers' compensation provider, after he experienced pain in his shoulders. This pain caused his arm to seize up while he was at work. On March 22, 2013, Dr. Larry Curtis informed Hathaway he had a shoulder strain from the February 19, 2013, fall. Lorina Steele, IPC's human resources administrator, received this information on the same day but believed Hathaway's pain and arm-seizure were caused by hyperglycemia. Because of this belief, she responded by telling Community Care that this injury was not workers' compensation related.

On March 28, 2013, Dr. Curtis sent a letter to Steele stating he "fe[lt] strongly that [Hathaway's injury] is work comp related." Dkt 145-8. The next day, Steele prepared a workers' compensation report ("First Report") and sent it to Liberty Mutual, IPC's insurer, along with the medical documentation she had received from Community Care. In the First Report, Steele did not include any information regarding Hathaway's shoulder injury. In an email to Liberty Mutual, Steele stated she didn't know how to complete a report for Hathaway because she believed the March 21, 2013, arm seizure was not related to his prior work injury.

Around mid-April of 2013, a co-worker informed Hathaway that IPC omitted his shoulder injury from their records. When Hathaway inquired about the omission, Gotch provided him a copy of an unsigned, typed report in place of the Handwritten Report. This typed report included only his thumb injury and did not reference his shoulder. Gotch told Hathaway to see Mike Willmore, another supervisor, about any concerns he had regarding the shoulder injury or Handwritten Report. On April 17, Hathaway met with Willmore to discuss his concerns. On April 18, IPC fired Hathaway, claiming he told another employee he would intentionally hurt himself at work. Hathaway was not given an opportunity to respond to those allegations.

Hathaway filed his Complaint on March 12, 2015, and the first trial commenced on December 11, 2017. The first trial resulted in a hung jury, and the Court ordered a new trial on all of Hathaway's claims. Dkt. 118. The second trial is currently scheduled to begin on October 28, 2019.

In anticipation of the upcoming trial, and pursuant to the Court's trial order (Dkt. 141), both parties filed motions in limine seeking to preclude certain evidence and testimony at trial.

### III. LEGAL STANDARD

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *Miller v. Lemhi Cty.*, No. 4:15-CV-00156-DCN, 2018 WL 1144970, at *1 (D. Idaho Mar. 2, 2018) (citing *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002)). "The term 'in limine' means 'at the outset.'

A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quoting Black's Law Dictionary 803 (8th ed. 2004)).

Because "[a]n in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989) (citation omitted), "a district court has discretion in ruling on a motion in limine," *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). Further, in limine rulings are preliminary and, therefore, "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

## IV. ANALYSIS

### A. Hathaway's Motions in Limine[3]

#### 1. EEOC Letter (Dkt. 156)

**GRANTED.**

In his first motion in limine, Hathaway moves to exclude a letter from William Benedict, a former EEOC investigator, because he believes it contains inadmissible hearsay and is inaccurate. In response, IPC filed a Notice of Non-Opposition and Notice of Withdrawal of their own motion in limine regarding Benedict's letter. Dkt. 175. Thus, as this motion is proper and unopposed, the Court grants it. Benedict's letter will not be admissible at trial.

---

[3] For brevity, the Court will not reiterate each sides' arguments at length as to each individual motion in limine. Additionally, the Court's rulings on these motions are interlocutory. Depending on how the parties present certain evidence at trial—particularly if the "door is opened" for any particular topic—the Court may reconsider its decision.

*2. Steele's Notes (Dkt. 157)*

**GRANTED (with withheld ruling on some issues).**

In this motion, Hathaway makes a renewed motion to exclude certain handwritten—and later typed—notes Steele prepared.[4] These notes summarize the events regarding Hathaway's injuries and Steele's involvement in the workers' compensation claim process. Hathaway asserts that Steele's notes are foundationless hearsay because Steele was not present for a number of the events she describes in her notes, but instead relied on information given to her from other employees. IPC argues that Steele's notes meet the business records exception from hearsay under Federal Rule of Evidence 803(6) and, alternatively, that it offers the notes for non-hearsay purposes. The Court addresses each theory in turn.

<u>i. Business Records</u>

Hearsay is an out of court statement offered to prove the truth of the matter asserted and is generally inadmissible. Fed. R. Evid. 801. Federal Rule of Evidence 803(6), however, excludes a document from the rule against hearsay if it qualifies as a business record.[5] *Id.* at 803(6). A document is considered a business record if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification

---

[4] The Court deferred ruling on Hathaway's prior motion (Dkt. 50) until trial. At trial, IPC did not seek to introduce Steele's notes, and thus the Court did not rule on the motion.

[5] This rule, titled "Records of a Regularly Conducted Activity," does not mention "business records." However, Rule 803(6) is commonly known as the "business records" exception. This is how the Court will refer to it.

that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

*Id.*

The purpose behind this exception is that "business records have a special indicia of reliability." *N.L.R.B. v. First Termite Control Co.*, 646 F.2d 424, 427 (9th Cir. 1981). Further, a "district court has wide discretion in determining whether a business record meets the trustworthiness standard." *United States v. Scholl*, 166 F.3d 964, 978 (9th Cir. 1999) (internal quotations omitted), as amended on denial of reh'g (Mar. 17, 1999).

Here, Hathaway contends that Steele's notes are hearsay and are not sufficiently trustworthy to qualify as a business record. He points out that there is no indication when the notes were prepared and that it appears IPC is really trying to replace its actual business records, such as the missing Handwritten Report, with these notes. IPC counters that Steele regularly prepares these notes in her capacity as the human resources manager. IPC states that this allows her to gather the necessary information to submit an injury report, which the law requires IPC to do.

After reviewing Steele's notes, the Court concludes that they constitute hearsay and do not qualify as business records under Rule 803(6). On its face, Steele's notes do not qualify as a business record because IPC has not indicated that Steele made her notes "at or near the time" of the events. Additionally, Hathaway has shown that the method or circumstances of preparation lack trustworthiness. *See* Fed. R. Evid. 803(6). Thus, IPC may not utilize them as business records under Rule 803(6).

<u>ii. Non-hearsay</u>

IPC further argues that it can use Steele's notes for non-hearsay purposes, *i.e.* that it can offer them for purposes other than to prove the truth of the matter asserted. IPC contends that it is entitled to introduce Steele's notes because Hathaway will argue that Steele intentionally omitted information about his shoulder injury when she reported the incident to Liberty Mutual. Because Steele attached her notes to an email she sent to Liberty Mutual, IPC believes they are entitled to use them to rebut Hathaway's allegation.

The Court agrees that these notes could be used for non-hearsay purposes, but under much narrower circumstances than IPC desires. As stated above, Steele's notes are hearsay and IPC cannot use them to prove the truth of what they assert. IPC contends that it still may use them as non-hearsay to counter Hathaway's argument that Steele withheld information from Liberty Mutual. This is true only if Hathaway first makes that argument. In other words, IPC may not introduce Steele's notes unless Hathaway opens the door by arguing that Steele withheld information from Liberty Mutual. To allow IPC to introduce them prior to such an argument would be to allow it to improperly sidestep the rule against hearsay. If, at trial, IPC believes that Hathaway has made this argument, it may make a showing outside the presence of the jury that Hathaway has opened the door (and that it can lay the appropriate foundation for Steele's notes to come in).

In sum, the Court finds that Steele's notes include hearsay and do not qualify as a business record under Rule 803(6). Further, Hathaway must first argue that IPC withheld information from Liberty Mutual before Steele's notes may come in as non-hearsay

evidence. In that event, the Court reserves ruling on any foundation, additional hearsay, and other applicable objections until trial.

### 3. *Supplemental Document 21 (Dkt. 158)*

**GRANTED.**

Hathaway next moves to exclude a document ("Doc. 21") attached to an email exchange between Steele and Todd Higgins, a man who IPC supposedly employed in December of 2013, under Federal Rule of Civil Procedure 37(c)(1). Hathaway bases this motion on the fact that IPC failed to provide Doc. 21 during discovery as required by Federal Rule of Civil Procedure 26. IPC argues that it promptly disclosed Doc. 21 when it realized Doc. 21 was missing (two years after discovery closed) and that it is Hathaway's fault for not noticing that Doc. 21 was missing earlier.

As the Court recently stated in a different case, "information not properly disclosed is inadmissible at trial—absent substantial justification." *Williams v. Madison Cty*, *Idaho*, No. 4:12-CV-00561-DCN, 2019 WL 4007217, at *12 (D. Idaho Aug. 23, 2019). The Court sees no reason to take a different position here. Further, blaming the other side for not catching one's own mistake is not an appropriate defense. IPC may have immediately provided Doc. 21 to Hathaway when he notified IPC it was missing, but this does not change the fact that IPC did not properly disclose it during discovery in the first instance. Thus, IPC may not use Doc. 21.[6]

---

[6] IPC argues that if the Court excludes Doc. 21 for its late disclosure, then it should also forbid Hathaway from using other documents IPC disclosed after discovery ended. Though the Court understands IPC's frustration, such a prohibition based solely on the late-disclosure of the documents would be inappropriate as Federal Rule of Civil Procedure 37(c)(1) prevents only the party who failed to provide the information from using it, not the other side.

*4. Table of Involuntary Terminations (Dkt. 159)*

**GRANTED in PART, DENIED in PART.**

Finally, Hathaway asserts that the Court should exclude IPC's use of a Federal Rule of Evidence 1006 summary exhibit titled "Table of Involuntary Terminations" ("Table"). The proponent of a summary exhibit "must establish a foundation that (1) the underlying materials upon which the summary is based are admissible in evidence; and (2) the underlying documents were made available to the opposing party for inspection." *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259.

Hathaway argues that the Court should bar the Table because IPC never made the underlying documents available to him. IPC is cryptic in stating that it may or may not attempt to use the Table at trial, but concedes that Hathaway's argument may have merit. Despite this, IPC argues that it could still utilize the Table for non-exhibit purposes, such as to refresh a witnesses' recollection under Federal Rule of Evidence 612.

As there is no real disagreement over the Table, the answer is fairly straightforward. IPC may not introduce the Table *as an exhibit* because it never disclosed the underlying documents to Hathaway. However, if IPC feels that there is a purpose for the Table outside using it as an exhibit, then it may make a showing to that effect outside the presence of the jury. Such a showing must still comply with the applicable Federal Rules of Evidence.

**B. IPC's Motions in Limine**

*1. Hathaway's Lack of Health Insurance (Dkt. 146)*

**GRANTED (with withheld ruling on some issues).**

In this motion, IPC seeks to exclude any evidence about Hathaway's financial

situation or his personal health insurance coverage. It argues this type of evidence is irrelevant and that the inflammatory effect it would have on a jury's sympathies outweighs any probative value it might otherwise have.

Evidence must be relevant in order to be admissible. Fed. R. Evid. 402.[7] Even relevant evidence, though, may be inadmissible under other rules of evidence. Federal Rule of Evidence 403 is one such rule that may bar relevant evidence. Under Federal Rule of Evidence 403, the Court must weigh the competing interest of (1) the probative value of any evidence, and (2) whether prejudice, confusion, delay, or other dangers will result if it is introduced. "Applying Rule 403 to determine if evidence is prejudicial . . . requires a fact-intensive, context-specific inquiry." *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 386 (2008). A Court has broad discretion in this inquiry. *See Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995).

As Hathaway correctly points out, this type of evidence can be relevant here in two separate ways. First, Hathaway states his ADA claim allows him to recoup damages for emotional distress. Hathaway argues that because IPC terminated him, he did not have health insurance and thus was unable to pay for, and receive, the needed shoulder surgery until workers' compensation paid for it some years later. Before he was able to receive surgery, Hathaway claims that the shoulder caused him substantial pain and made it hard to sleep. Hathaway further alleges that, due to the shoulder injury, he was able to lift things with only one hand. This prevented him from mitigating his damages by obtaining other

---

[7] "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

employment. In order to fully explain why he didn't receive the surgery sooner, Hathaway contends, he will need to explain that he had neither the insurance coverage, nor the funds to do so.

The Court agrees to the extent that this evidence *could* be relevant. Its relevance, however, depends on one of two things: either Hathaway must first make a prima facie case of his ADA claim, or IPC must open the door by attacking Hathaway's failure to mitigate. In other words, without making a prima facie showing of his ADA claim, Hathaway's damages relating to that claim are irrelevant. Any mention of Hathaway's financial state or lack of insurance before making his prima facie case would also violate Rule 403 because the probative value at that time would be minimal and the prejudicial effect would be high. Similarly, Hathaway cannot use this information to counter IPC's defense regarding mitigation until IPC makes that defense. If and when Hathaway believes he has introduced sufficient evidence to make his lack of insurance and money relevant, he may make a showing outside the presence of the jury, and the Court will then determine if this evidence can come in.

Assuming Hathaway can make such a showing, the Court concludes that information regarding his insurance and financial status is not unduly prejudicial under Rule 403. Though Hathaway's physical and mental turmoil may likely touch upon a jury's sympathies, this is typical in a case where a plaintiff is allowed to seek emotional distress damages. Alternatively, as explained above, the Court must allow Hathaway to explain why he delayed in mitigating his damages if that argument arises. Thus, the Court finds

that if this evidence becomes relevant, the prejudice IPC would suffer would not be unfair and, in any event, would not substantially outweigh its probative value.

In sum, the Court finds that evidence of Hathaway's lack of health insurance and money following his termination is not unduly prejudicial. However, it is irrelevant unless and until Hathaway makes a showing outside the presence of the jury that either (1) he has presented a prima facie case on his ADA claim, and/or (2) IPC introduces evidence that Hathaway failed to mitigate his damages.

2. *Workers' Compensation Dispute (Dkt. 161)*

**GRANTED in PART, DENIED in PART (with withheld ruling on some issues).**

Here, similar to the motion just discussed, IPC seeks to exclude evidence and argument regarding post-termination events and the two-year time span before Hathaway received surgery on his shoulder. IPC claims again that these matters are irrelevant and unfairly prejudicial. Moreover, IPC argues that the Court should exclude a list of potential exhibits on additional grounds.

The Court adopts the reasoning and conclusion found in the above section here. Generally speaking, information regarding the extent of Hathaway's injuries and the delay in getting them treated is relevant only if Hathaway first proves a prima facie case of his ADA claim, or IPC opens the door by arguing that Hathaway should have mitigated his damages. Again, Hathaway must establish either of these outside the presence of the jury.

This does not prevent Hathaway or IPC from stating any facts they believe in good faith they will establish throughout trial in their opening statements. For example, during opening statements at the previous trial, Hathaway's counsel told the jury that it took over

two years for Hathaway to obtain shoulder surgery. Such statements, if counsel believes they can establish them on direct or cross-examination, would be appropriate here.

As for the specific documents IPC seeks to exclude, the Court will address each below. IPC argues that these documents are irrelevant and prejudicial. For each proposed exhibit IPC seeks to exclude, the Court will address these arguments only if it feels that any specific document is in fact irrelevant or unfairly prejudicial. If the Court makes no such finding, the parties should assume that the document does not violate 401 nor 403. Similarly, Hathaway may use these documents only after he establishes a prima facie case or IPC has argued mitigation, as outlined above.

     i.   Proposed Exhibit 1029

**GRANTED (with withheld rulings).**

Proposed Exhibit 1029 ("1029") is a letter from Liberty Mutual to Hathaway stating that the only claim that it would cover was his thumb injury. IPC claims that 1029 is inappropriate as it contains hearsay. Hathaway contends that he can use 1029 for the non-hearsay purpose of establishing notice that Liberty Mutual was not going to cover his shoulder surgery.

The Court agrees with IPC. Hearsay is an out of court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801. An out of court assertion may be introduced, however, to prove that one to whom the assertion was communicated had knowledge or notice of something. *See Sears v. S. Pac. Co.,* 313 F.2d 498, 501 (9th Cir. 1963).

In *Sears*, Plaintiff, an employee of Defendant, was injured as he walked atop a freight car on a train. *Id* at 500. A wood chip machine was next to the train track, and the machine's chute extended over the track. *Id.* As the train passed the wood chip machine, the chute struck Plaintiff, severely injuring him. *Id.*

Plaintiff sought to prove that Defendant had knowledge of the dangerous condition, *i.e.* the wood chip machine and its low-hanging chute, through a letter written to Defendants by the local lodge of the Brotherhood of Railroad Trainmen some two years prior to Plaintiff's injury. *Id.* The letter stated "[w]here chips are loaded it will not clear for an employee to walk on top of cars. This . . . has been in a serious condition for two years and I have repeatedly asked . . . to have these unsafe altered." *Id.*

In reviewing the admissibility of the letter as hearsay, the *Sears* court held:

> As proof of the condition of the property and past complaints concerning that condition, the statements were hearsay, but the exhibit was not offered to prove those fact [sic]; instead, counsel was careful to state that the purpose of the letter was simply to show that the defendant had knowledge of the alleged hazard from and after the date it received the letter.

*Id.* at 501. In other words, the letter stating that the wood chip machine created a dangerous condition two years ago could not be offered to prove that the wood chip machine created a dangerous condition when Plaintiff was injured, but it could be offered to show that Defendant had knowledge that a dangerous condition existed.

This "notice" or "knowledge" use of an assertion is typically used when knowledge or notice is a necessary element or defense in a case. *See id. See also U.S. v. Kutas*, 542 F.2d 527, 528 (9th Cir. 1976) (holding a statement that "the police weren't looking for [Bowles] because they were looking for Hearst," made in Kutas' presence, was not hearsay

because it was admitted to show that Kutas had knowledge that Bowels was an escapee, as Kutas was charged with knowingly harboring and concealing an escaped prisoner). Otherwise, a party could easily bypass the rule against hearsay by stating that it is not offering an assertion to prove the truth of the matter asserted, but to prove notice of what is being asserted.

Here, Hathaway is trying to create an end-around to the rule against hearsay. Hathaway seeks to introduce a letter stating that Liberty Mutual would not cover his shoulder injury. Hathaway argues that he is introducing it to prove he had notice. This argument, though, fails to allege what this letter gives notice of and Hathaway does not provide any authority to support it. Apparently—to use the terms found in Rule 801— Hathaway is offering 1029, not to prove the truth of the matter asserted, but to prove he had notice of the truth of the matter asserted. There is no reason Hathaway must show he had notice that Liberty Mutual would not cover his shoulder injury as opposed to showing simply that Liberty Mutual would not cover his shoulder injury.

Thus, Hathaway is really offering this letter to prove the truth of the matter asserted. If Hathaway intends to use 1029, he must make a showing outside the presence of the jury that he can overcome the rule against hearsay.

### ii. Proposed Exhibit 1030

**DENIED (with withheld rulings).**

Proposed exhibit 1030 ("1030") is an email from Liberty Mutual to Steele. Liberty Mutual states "I've got bad news. I'll be accepting the left shoulder and positive MRI." The email goes on to explain the findings of Liberty Mutual's regional medical director.

IPC argues that 1030 is full of hearsay and that no exception is applicable. Hathaway contends, as he did with 1029, that it may be used as non-hearsay to prove notice to Steele, or alternatively, it is a then-existing condition under Rule 803(3) or a business record under 803(6).

Viewing 1030 in light of Hathaway's position, the first portion of 1030 stating "I've got bad news. I'll be accepting the left shoulder and positive MRI[]" is admissible. "I've got bad news" is not hearsay as Hathaway is not offering it to prove the truth of the matter asserted. Further, "I'll be accepting the left shoulder and positive MRI[]" qualifies as an exception to hearsay under Rule 803(3) as a then-existing condition. The remainder of the email, though, contains hearsay that the Court cannot at this time rule on.

Thus, the first portion of 1030, as quoted above, is admissible provided proper foundation and authentication. Hathaway may elect to redact the remainder of the body of the email and introduce the exhibit in that manner. However, if Hathaway wants to admit 1030 in its entirety, he must properly lay the foundation to support that it qualifies as a business record under Rule 803(6) or meets another exception to the rule against hearsay.

### iii. Proposed Exhibit 1031 and 1032

**DENIED WITHOUT PREJUDICE.**

Proposed exhibits 1031 and 1032 are emails that IPC claims contains privileged attorney work product. Oddly, rather than argue this in its motion, IPC states that it addresses this in a different motion. Just as perplexing, IPC fails to refer the Court to the other motion. After searching through the record, the Court is unable to identify any such

motion. IPC can alert the Court to where exactly it discusses this or simply bring it up during trial should it wish to continue with this objection.

### iv. Proposed Exhibit 1033

**GRANTED.**

Proposed exhibit 1033 ("1033") is the report of an independent medical examination. Hathaway, in response to the motion, states that he will withdraw this exhibit form the list.

### v. Proposed Exhibit 1034

**DENIED.**

Proposed exhibit 1034 is medical imaging of Hathaway's shoulder. IPC seeks to exclude this based on relevancy and prejudicial effect. As the Court has stated at the beginning of subsection 2, these arguments alone are insufficient. Furthermore, Hathaway states that these images will help his medical expert explain his findings during his surgery to repair Hathaway's torn rotator cuff. In the first trial, IPC stipulated to information regarding Hathaway's shoulder surgery, but has made no such stipulation for this trial. As this medical imaging is conditionally relevant, as previously explained, and as Hathaway must show that the surgery was necessary, IPC's motion as it relates to proposed exhibit 1034 is DENIED.

### vi. Proposed Exhibit 1035 and 1036

**WITHHELD RULING.**

These exhibits document Hathaway's post-surgery work restrictions. IPC argues that the same hearsay issues that applied to 1033 apply to these exhibits and incorporates

those arguments here. There is a problem with this, though. Exhibit 1033 differs substantially from the proposed exhibits here, and thus many of the hearsay arguments are inapplicable.[8] In response, Hathaway addresses the relevancy of proposed exhibits 1035 and 1036, but does not address IPC's misapplied hearsay concerns.

Without an understanding of how Hathaway will present these exhibits or IPC's specific hearsay objections, the Court declines to make a ruling on them at this time.[9] Should Hathaway seek to introduce exhibit 1035 or 1036 and IPC object to it at trial, the Court will then address this issue.

vii. Proposed Exhibit 1037

**DENIED.**

This exhibit is a document titled "Request for Workers' Compensation Records by Parties." IPC seeks to exclude it solely on relevance/prejudicial grounds. Hathaway contends that proposed exhibit 1037 is relevant to show that Steele was on notice to retain documents—as Hathaway's theme of this case focuses on the missing Handwritten Report. The Court agrees. Though IPC made this request after it terminated Hathaway's employment, Hathaway has argued that IPC possibly withheld or destroyed the Handwritten Report throughout the duration of this litigation. Proposed exhibit 1037 is therefore relevant subject to rules on admissibility.

3. *Exhibits 2000 and 2009 (Dkt. 149)*

---

[8] For example, IPC argues that 1033 cannot meet an exception to hearsay as it was prepared for purposes of insurance, not treatment. IPC cannot use this argument here, where the post-surgery restrictions were not created for insurance coverage decisions, but for treatment.
[9] Depending on how Hathaway presents these exhibits, they could either violate the rule against hearsay or be admissible.

**GRANTED in PART, DENIED in PART.**

In this motion, IPC seeks to admit exhibits 2000 (the "Logbook") and 2009 (the "Termination Note") on the basis that the Court admitted them in the first trial. In the first trial, Hathaway objected to the Court admitting the documents and raises the same objections here.

Frankly, outside of a stipulation, there is no authority the Court is aware of that would allow it to admit evidence before trial. The Federal Rules of Evidence mandate that proper foundation, authentication, or other relevant testimony is necessary for any evidence. Based on this, the Court will not affirmatively say that these documents are admissible. However, as IPC was able to admit them in the first trial, it is likely that it will be able to do so again.

The Court can, though, address Hathaway's arguments that it should exclude these documents. Hathaway believes that the Logbook is incomplete because IPC redacted the names of other employees and, therefore, it cannot qualify as a business record. Without the remainder of the entrees, Hathaway contends, the Logbook is untrustworthy because the Court cannot verify the entry regarding Hathaway is consistent with the practices regarding the other entries.

The Court stands by its previous ruling that the Logbook may qualify as a business record. Upon further consideration, however, the Court holds that for a witness to lay the proper foundation, the Logbook must be presented in full. IPC may redact the names of the individuals other than Hathaway, but must include the remainder of the information it previously redacted.

Hathaway next argues that the Termination Note is inadmissible as it contains hearsay and violates prior orders regarding sanctions. Dkts. 48, 82. The Termination Note briefly details IPC's reason for firing Hathaway: that he allegedly told another co-worker he was going to injure himself to get money. Hathaway believes the Court must exclude this because it is hearsay, contains a forged signature, and violates the Court's orders regarding sanctions.

Just as in the previous trial, the Court believes Hathaway's arguments are insufficient to exclude the Termination Note. As the Court noted in its order regarding sanctions (Dkt. 82), IPC may use the Termination Note to show its reason for terminating Hathaway's employment, not to prove the truth of its contents. Further, whether or not Steele forged Hathaway's signature is an appropriate topic for cross-examination, but is not enough to exclude the Termination Note. Lastly, after carefully reviewing both orders regarding sanctions, the Court concludes again that the Termination Note does not run afoul of the sanctions it placed on IPC. IPC may seek to admit it at trial, subject to IPC laying the proper foundation and any other applicable objections.

With that being said, the Court wishes to revisit a ruling it made in regard to the sanctioning order. At the previous trial, the Court prevented Hathaway from signaling to the jury that they did not hear testimony from the "reliable individual" IPC relied on in its decision to fire Hathaway. After further consideration, the Court concludes that this essentially punishes Hathaway via IPC's sanctions. Such punishment is out of place. Thus, at trial, the Court will allow Hathaway to highlight the fact that the jury did not hear from the unknown reliable individual who allegedly disclosed Hathaway's threat to IPC.

*4.  Jury Instruction on "Motivating Factor" (Dkt. 162)*

**GRANTED.**

Next, IPC urges the Court to again instruct the jury that Hathaway has the burden of proving that IPC discharged him "because of" his disability on his ADA claim. In the first trial, the parties and the Court agreed that the proper language for this instruction was "because of." However, the parties strongly contested the appropriate definition of "because of." At the first trial, IPC did not want the Court to instruct the jurors further on the definition of "because of" (when they sent a question requesting clarification??) and believed the jurors should interpret it as best they could. Hathaway, relying on *Head v. Glacier Northwest, Inc.*, 413 F.3d 1053 (9th Cir. 2005), wanted the Court to instruct the jury that "because of" encompassed "motivating factor," *i.e.* that Hathaway could succeed on his ADA claim if he could show that his disability was a motivating factor in IPC's decision to fire him.

After discussing the issue *ad nauseum*,[10] the Court declined to instruct the jury further on the definition of "because of." Here, the parties essentially make the same arguments as they did before: IPC believes "because of" requires "but for" causation, and Hathaway insists it warrants a "motivating factor" instruction.

Fortunately for the Court, the Ninth Circuit directly addressed this issue in the recent

---

[10] The parties thoroughly and appropriately presented arguments to the Court before jury instructions were given. Then, on the last day of jury deliberations, the jury submitted a question asking the Court to clarify the "because of" jury instruction. Dkt. 105, at 3. The parties and the Court then rehashed the arguments once more.

case of *Murray v. Mayo Clinic*, 934 F.3d 1101 (9th Cir. 2019).[11] The *Murray* court conducted an extensive analysis on the cases both IPC and Hathaway cite to in support of their respective positions and explicitly overruled *Head*. *Id.* at 1105 ("Because *Head*'s reasoning is clearly irreconcilable with *Gross* and *Nassar*, we overrule *Head*'s holding that a plaintiff bringing a discrimination claim under Title I of the ADA need show only that a disability was a motivating factor of the adverse employment action. We hold instead that an ADA discrimination plaintiff . . . must show that the adverse employment action would not have occurred but for the disability.").

Thus, clear, binding authority establishes that "because of" is the appropriate language and such language requires a "but for" standard, not a "motivating factor" standard. As the Court wishes to avoid any jury confusion regarding the "because of" language, the parties may submit a separate jury instruction defining "because of" in line with *Murray*.

### 5. *EEOC Intake Questionnaire (Dkt. 163)*

**DENIED.**

In this motion in limine, IPC seeks to prevent Hathaway from suggesting that someone other than himself had a role in preparing his EEOC Intake Questionnaire. At the first trial, IPC introduced Hathaway's EEOC Intake Questionnaire to highlight discrepancies between it and his later deposition and trial testimonies. On re-direct, Hathaway stated that his counsel's paralegal, Ms. Gneiting, prepared the EEOC Intake

---

[11] This motion in limine and its response were filed in May of 2019. The Ninth Circuit issued *Murray* on August 20, 2019.

Questionnaire, which included some mistakes that he later corrected. IPC argues that (1) Hathaway's testimony waived any attorney client privilege that applied to the fact that Gneiting prepared his EEOC Intake Questionnaire; (2) because Hathaway waived the privilege, he was under a duty to disclose both the red-lined version of the EEOC Intake Questionnaire and Gneiting as a person likely to have discoverable information; and (3) this failure should prevent him from testifying that Gneiting was involved at all at the next trial.

To start, the Court finds that Hathaway did not wave any attorney-client privilege that applied when he testified that Gneiting helped prepare his EEOC Intake Questionnaire. To hold otherwise would create a gaping hole in the attorney-client privilege and work-product doctrines. Under IPC's theory, if a client testified on cross-examination that his attorney helped him with his case, this would waive any attorney-client privilege. This theory is unacceptable.

As the Court has concluded that no waiver occurred, there is no need to address the remainder of IPC's arguments. Though there are other issues that would prevent the Court from granting this motion, it is sufficient to state that the motion is denied because there was no waiver of the attorney-client privilege. Without that domino falling, IPC cannot reach its conclusion that this Court should impose Rule 37 sanctions. Thus, the Court will allow Hathaway to explain any discrepancies between the EEOC Intake Questionnaire and

his later testimony if IPC first points them out.[12]

    *6. Spoliation (Dkt. 167) and Motion for Hearing (Dkt. 208)*

**RULING WITHHELD / DENIED**

In its last motion in limine, IPC seeks to preclude a jury instruction given in the first trial regarding spoliation. That instruction read:

> Plaintiff contends that Defendant at one time possessed preliminary reports concerning Plaintiff's workplace injuries that took place on February 19, 2013, and April 2, 2013. However, Defendant contends that these reports never existed or were not destroyed.
> You may presume that such evidence is relevant to this case and would have been unfavorable to Defendant if you find by a preponderance of the evidence that Defendant destroyed or failed to produce the evidence.

Dkt. 100, at 31. IPC contends that Hathaway cannot show that it destroyed relevant evidence that it had a duty to preserve, so the Court should not give this instruction. Hathaway relies on his own, as well as Gotch's testimony to argue that the Handwritten Report existed, that IPC had a duty to preserve it, and since there is no Handwritten Report now someone must have destroyed it.

The Court based its prior instruction on the evidence presented at the first trial. At this point, the Court can neither say that it will give this instruction again, nor can it say that it will not give a similar instruction, because it does not know what the evidence will be at trial.

On that note, IPC filed a motion for a hearing regarding this motion in limine. Dkt.

---

[12] Hathaway argues that if IPC introduced the EEOC Intake Questionnaire again he would be entitled to explain this discrepancy under Federal Rule of Evidence 613(b). However, by its own language, Rule 613(b) does not apply to the EEOC Intake Questionnaire because it is the statement of a party opponent.

208. It claims the issue of spoliation is separate from Hathaway's claims and thus the Court should rule on it outside the presence of the jury. Hathaway opposes the motion, believing the alleged retention and/or destruction of the Handwritten Report is very fact-intensive and is tied up with his underlying claims.

The Court agrees with Hathaway. The spoliation alleged here does not fit the mold of typical spoliation. The alleged spoliation here occurred before discovery, before Hathaway filed his Complaint, and even before IPC terminated him. Indeed, Hathaway claims his inquiry into the missing Handwritten Report was one of the reason's IPC terminated him. The Court cannot easily cure this issue by "ordering additional discovery that may remedy the loss of evidence, [or] permitting additional depositions." *Sherwood v. BNSF Ry. Co.*, 2:16-CV-00008-BLW, 2019 WL 1413747 (D. Idaho Mar. 28, 2019). Instead, the issue of spoliation here is so fact driven and intertwined with Hathaway's underlying claims that the Court cannot take it away from the jury. The Court will reserve ruling on spoliation until after all the evidence has been presented, just as it did in the prior trial.

## V. ORDER

IT IS HEREBY ORDERED THAT:

1. Hathaway's Motion in Limine concerning the EEOC Letter (Dkt. 156) is GRANTED.

2. Hathaway's Motion in Limine concerning Steele's notes (Dkt. 157) is GRANTED with withheld rulings, as outlined above.

3. Hathaway's Motion in Limine concerning Doc. 21 (Dkt. 158) is GRANTED.

4. Hathaway's Motion in Limine concerning the Table (Dkt. 159) is GRANTED in PART, DENIED in PART, as outlined above.

5. IPC's Motion in Limine concerning Hathaway's health insurance (Dkt. 146) is GRANTED with withheld rulings, as outlined above.

6. IPC's Motion in Limine concerning worker's compensation arguments (Dkt. 161) is GRANTED in PART, DENIED in PART, as outlined above

7. IPC's Motion in Limine concerning the EEOC Intake Questionnaire (Dkt. 163) is DENIED.

8. IPC's Motion in Limine concerning the Logbook and the Termination Note (Dkt. 149) is GRANTED in PART and DENIED in PART, as outlined above.

9. IPC's Motion in Limine concerning "motivating factor" (Dkt. 162) is GRANTED.

10. IPC's Motion in Limine concerning spoliation (Dkt. 167) is WITHHELD for now, as outlined above.

11. IPC's Motion for a Videoconference Hearing (Dkt. 208) is DENIED

DATED: October 21, 2019

David C. Nye
Chief U.S. District Court Judge